**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ALAMO EXPRESS, INC. and Alamo Cartage Company, Respondents.**

**No. 28393.**

United States Court of Appeals,
Fifth Circuit.

July 15, 1970.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Ira M. Goldberg, Atty., N. L. R. B., Washington, D.C., Clifford Potter, Director, Region 23, N. L. R. B., Houston, Tex., for petitioner.

Allen P. Schoolfield, Jr., Hugh M. Smith, Dallas, Tex., Schoolfield & Smith, Dallas, Tex., for respondents.

Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

This is an appeal by the National Labor Relations Board (hereinafter Board) pursuant to Section 10(e) of the National Labor Relations Act (hereinafter the Act), 29 U.S.C. § 160(e), for enforcement of its order issued March 13, 1968, against Alamo Express, Inc. and Alamo Cartage Company (hereinafter Alamo).[1] We find from the record that there is substantial evidence to support the Board's order, and it is therefore enforced.

Alamo is engaged in intrastate transportation of freight by truck in Texas.[2] It employs over 400 employees and has offices and terminals in several southern Texas towns, with its home office in San Antonio, Texas. The union in this case is a conglomerate of three Teamster locals.[3] There is no question that it constitutes a labor organization within the meaning of the Act.

There are two unfair labor practices charged in this case:

(1) That Alamo violated Section 8(a) (5) of the Act (29 U.S.C. § 158) for

---

1. The Board's Decision and Order are reported in 170 NLRB 26.

2. The jurisdiction of the Board is not questioned in this case.

3. General Drivers, Warehousemen and Helpers Local Union Nos. 968, 657, and 490, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. (Herein Union).

refusing to bargain with the Union, and (2) That Alamo violated Section 8(a) (1) and (3) of the Act (29 U.S.C. § 158) by discriminatorily discharging four of its employees.

These two charges will be treated separately below.

## REFUSAL TO BARGAIN

Following repeated unsuccessful attempts to organize Alamo, the Union filed a petition with the Board on July 6, 1965, requesting a representation election among Alamo's employees. The Union and Alamo, with the approval of the Regional Director, agreed upon an appropriate unit, and the election was conducted on July 28 and 29, 1965. Though the initial results were 202 to 198 in favor of the Union, there were an additional 21 ballots which were challenged. Hearings were held by the Regional Director in October and November of 1965 to determine the outcome of the challenged ballots. In her report and recommendations, the Regional Director found that 13 of the 20 as yet unopened ballots should not be counted as they were cast by ineligible voters; that seven were cast by eligible voters and should be counted; and that one already-opened ballot, which contained a partial erasure was sufficiently clear to be counted also. Alamo appealed to the Board asserting that the 13 challenged ballots should be counted. The Board ruled on May 5, 1966, that the 13 ballots not be counted, that the seven be counted, and that the single ballot was too illegible to be counted. The seven ballots were opened and counted, reaffirming a union majority, 206 to 201. The Union was then certified as the bargaining representative on May 20, 1966.

Alamo subsequently refused to bargain with the Union, prompting the latter to charge Alamo with violation of Section 8(a) (5) of the Act. Before the

Trial Examiner, Alamo asserted as its defense that the certification of the Union was improper because: (1) the 13 challenged ballots should have been counted; hence, the Union's majority was not a valid one; and (2) an employee of Alamo, named Rogelio Gutierrez, was a supervisor who exerted undue influence upon his subordinate employees in favor of the Union.[4]

The Trial Examiner considered the Board's certification to be binding and that matters relating to the representation election could not be relitigated. The Board affirmed the Trial Examiner, but took under consideration the undue influence charge, and found that Gutierrez was not a supervisor at the time of the election, and that, even if he were, whatever influence he might have had on other employees was not coercive and did not in any way affect the validity of the election. The Board thus found that Alamo had violated Section 8(a) (5) of the Act.

As to the issue of the 13 ineligible voters, Alamo specifically urges that five should have been counted because the five voters were employees and not supervisors as the Board had found them to be; that two more ballots should have been counted because the two voters were employed by Alamo on the cutoff date for establishing eligibility to vote rather than thereafter; and that an additional six ballots should have been counted because the six voters were regular employees eligible to vote rather than ineligible casual employees.

As to the supervisory status of the first group of five challenged voters, Section 2(11) of the Act provides:

The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees or responsibly to di-

---

4. This alleged fact did not come to Alamo's attention until after the time for filing objections to the election had passed. For this reason, the Trial Examiner and Board properly heard arguments on this contention, even though not reviewed by the Board at the post-election hearing.

rect them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11).

■ The question is one of fact and often turns on "gradations of authority * * * so infinite and subtle that of necessity a large measure of informed discretion is involved in the exercise by the Board of its primary function to determine those who as a practical matter fall within the statutory definition of supervision". N.L.R.B. v. Swift and Company, 1 Cir., 1961, 292 F.2d 561. Thus, as to the five employees in question here, the question is essentially whether the findings of the Board are "supported by substantial evidence on the record considered as a whole. * * * " 29 U.S.C. § 160(e). After a careful review of the record, we find that there is ample support for the Board's findings. Of the five employees in question here, each possessed at least one of the supervisory characteristics set out in Section 2(11).

■ The eligibility of two of the employees (Barrera and Robinson) was based on the fact that the two men were employed on July 12 and 13 respectively when the stipulated cutoff date for eligibility of employees was July 10. The record directly bears out these facts; thus, there is substantial evidence to support the Board's finding of ineligibility.

■ As to the status of the remaining six ineligible voters there was much evidence produced at the hearing to prove that they worked only intermittently, on days when they were needed, prior to the July 10 cutoff date for eligibility and that they logged but a few hours even on those days. The evidence as to their casual employee status is unrefuted and amply supports the Board's finding.

■■ With respect to Gutierrez, we find that there is substantial evidence in the record to support the Board's findings that he was not a supervisory employee and that his work at the time of the election was only that of a temporary leadman. He therefore lacked the influence capable of making his assertions in favor of the Union undue and coercive. We also agree with the Trial Examiner that even if Gutierrez were a supervisor he did not exert any pro-union pressure on his subordinates, other than statements of personal preference, such as to have a coercive effect on their vote.

Therefore, the Trial Examiner's and Board's conclusion that Alamo violated Section 8(a) (5) of the Act is affirmed and the Board's order requiring Alamo to bargain collectively with the Union as the exclusive representative of its employees in the appropriate unit is enforced.

## THE DISCHARGE OF FOUR EMPLOYEES

The second charge brought against Alamo is that it discharged four employees because of their engaging in protective activity in violation of Section 8(a) (1) and (3) of the Act. The Trial Examiner found, and the Board adopted as its findings, that two of these employees (Perez and Fonteno) were discriminatorily discharged for their union activity, and that the other two (Rodney and Jefferson) were discharged for their refusal to cross a picket line. The Board ordered that Alamo offer to reinstate them and make them whole and post an appropriate notice on its premises.

■■ Again, it is within the province of the Board to make the initial determination as to the motivation of the employer's act of discharging its employees. United States Rubber Co. v. N.L.R.B., 5 Cir., 1967, 384 F.2d 660, Cf., N.L.R.B. v. Ogle Protection Service, Inc., 6 Cir., 1967, 375 F.2d 497, cert. den. 389 U.S. 843, 88 S.Ct. 84, 19 L.Ed. 2d 108. As to Perez and Fonteno, there

is substantial evidence in the record as a whole to support the Board's conclusion that a motivating factor in their discharges was to discriminate against them for their known union support. See Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

The other two employees in question here, Rodney and Jefferson, were discharged because of their separate refusals to cross a picket line of another union to pick up merchandise at the premises of Southwestern Pipe Company. Alamo does not deny, and the evidence clearly shows, that this refusal was the reason for the discharge of both the men. Alamo contends that the discharges were permissible under the law, where such were in the protection of its overriding business interests. Teamsters, Chauffeurs and Helpers Local Union No. 79, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. N.L.R.B., 1963, 117 U.S.App.D.C. 84, 325 F.2d 1011.

■ The refusal of an employee to cross the picket line of another union than his own at another plant than that of his employer has been held to be protected activity under Section 7 of the Act. N.L.R.B. v. Rockaway News Supply Co., 2 Cir., 1952, 197 F.2d 111 (dictum). However, it is equally settled that the employee's activity must be balanced against the specific business interests of his employer. Overnite Transportation Co., 154 NLRB 1271 (1965). *See generally*, N.L.R.B. v. Fleetwood Trailer Co., 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967); N.L.R.B. v. Great Dane Trailers, 388 U.S. 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967); N.L.R.B. v. Mackey Radio and Tel. Co., 304 U.S. 333, 58 S.Ct. 904 82 L.Ed. 1381 (1938). In striking this balance, an important evidentiary factor to be considered in showing the necessity of the employer's business interest is whether the employer or his foremen sought to replace the discharged employees with other employees who were willing to cross the picket line. *Overnite,* supra. There was no evidence that the two men were eventually replaced by an employee willing to cross the picket line. Nor was the pickup or delivery to this particular site within a permanent route or special skill of either Rodney or Jefferson such that no one would have been capable of replacing them. *Cf.,* Red Wing Carriers, Inc., 137 NLRB 1545. It was a routine pickup which, as the Trial Examiner found, could have been performed by any of Alamo's other employees at the Houston terminal. Furthermore, as the Trial Examiner so found, concurrent with these discharges was underlying hostility toward the Union on the part of Alamo, as the latter had repeatedly made known its feelings not to deal with the Union.[5]

Therefore, as to the four employees who were discharged by Alamo, the Board's order, finding violations of Section 8(a) (1) and (3) as to each discharge and requiring an offer of reinstatement, of compensating to make whole and of posting appropriate notices is

Enforced.

5. The discharges occurred on July 28, 1966, but, while a year had passed since the election, the board had only recently certified the Union (May 20, 1966) and charges and complaints by the Union in this case were filed in June and July preceding these discharges. Other evidence of anti-union animus at the time of these two discharges was: the previous discharges of two other employees; Rodney had served as an observer on the day of the election and Alamo knew of his pro-union activities; Alamo's vice president testified, "If a man can't cross a picket line, I can't use him".