**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SWAIN AND MORRIS CONSTRUC-TION CO., Respondent.**

No. 23809.

United States Court of Appeals, Ninth Circuit.

Aug. 6, 1970.

862

Eugene Granaf (argued), Marcel Mallet-Prevost, Dominick L. Manoli, Arnold Ordman, Counsels, N.L.R.B., Glen M. Bendixsen and Allen H. Sachsel, Attys., N.L.R.B., Washington, D. C., Thomas P. Graham, Director, Region 19, N.L.R.B., Seattle, Wash., for petitioner.

Howard C. Burton (argued), Great Falls, Mont., for respondent.

Before CHAMBERS, MERRILL, Circuit Judges, and WOLLENBERG, District Judge.

WOLLENBERG, District Judge.

This dispute arose out of the discharge by respondents of two employees for refusing to cross a picket line of an employer other than their own. Respondent constructs power and telephone facilities in Montana, chiefly for the Montana Power Company. On June 30, 1966, respondent sent a crew to do several jobs for Montana Power, among which was the installation of yard or "security" lights for the Northern Timber Company. The latter was at that time engaged in an organizational dispute with the Butte Building Trades Council; a picket line had been set up which respondents' crew refused to cross. After some discussion, respondent discharged the crew. The Trial Examiner found the discharge to have been motivated by *bona fide* business considerations. The Board, however, found the primary motivation to have been the crew's protected union activities. The Court must determine whether there is sufficient evidence in the record to support the Board.

The Court will not reach respondent's allegation that the refusal to cross the picket line was unprotected secondary boycott activity. The issue was not raised or proven before the Trial Examiner or the Board, and no showing is made that extraordinary circumstances prevented so doing. Cascade Employers' Assoc. v. N.L.R.B., 404 F.2d 490 (9th Cir. 1968).

The primary motivation for a discharge in a context such as this is to be inferred from the totality of circumstances; the declarations of the parties are not necessarily to be taken at face value. Shattuck Denn Mining Corp. v. N.L.R.B., 262 F.2d 466 (9th Cir. 1966). Among circumstances to be considered are evidences of union animus on the part of those concerned, the relative importance to the employer of the job which his employees have refused to do, the availability of alternate work for the employees who find themselves faced with a picket line, the ability of the employer to obtain other workers willing to cross the line, etc. Redwing Carriers Inc., 137 NLRB 1545 (1962), enf'd *sub nom.*, Teamsters Local 79 v. N.L.R.B., 325 F.2d 1011 (D.C. Cir. 1963); Overnite Transportation Co., 154 NLRB 502 (1965), enf'd *sub nom.* Truck Drivers & Helpers, Local No. 728 v. N.L.R.B., 117 U.S.App.D.C. 84, 364 F.2d 682 (1966); Getman, The Protection of Economic Pressure by Section 7 of the National Labor Relations Act, 115 U.Pa.L.Rev. 1195 (1967).

The Court has examined the record herein and finds substantial evidence to support the Board finding. Respondent over-emphasizes the importance of its own lack of anit-union bias. The evidence showed that Northern Timber may well have been the only party with any real feeling of grievance against labor; it, after all, was the focal point of the primary dispute. Northern complained vehemently to Montana about the failure to install the yard lights. This complaint might well have been motivated by anti-union feelings, and because of the relationship between

all parties concerned, the effects of Northern's grievance may well have been felt by respondent.

More important is the evidence that the crew was discharged though all parties knew that immediate replacement with a crew willing to cross the picket line was highly unlikely. "Respondent could have assigned any one of its many crews to perform the work at Northern but to do so * * *, would not have been economically or practically feasible. Respondent's crews were spread from border to border across Montana. Some were engaged in critical work. All were union men." (Respondent's Brief at p. 8). What legitimate business reason was served, then, by the discharge? The Board could fairly conclude that the only real reason for the discharge was to make an example of the employees involved. A substitute crew was not brought in until August 4; the discharge had been on July 21. The substitutes did not refuse to cross the picket line for the simple reason that picketing had, by August 4, ceased. All of this points to the fact that if the original crew had not been discharged, the work at Northern would have been completed at the same time as it was in fact done, and no violence would have been done to the employees' right, admitted for the purposes of this case, to refuse to cross the line.

The Board also had reason to find that the work at Northern was not of such importance that its immediate completion was necessary for the continuing and orderly operation of respondent's business. The Court refers to the order assigned to the jobs to be done at Phillipsburg, and to the fact that the work was not done, ultimately, until August 4.

Finally, the Court notes the testimony of Mr. Morris. While not without some ambiguities, it could support a finding that other work could have been given the men who were discharged (Tr. 79–80). This is not the situation that existed in Redwing, cit. supra, where the balking employees were permanently assigned to the job they refused to do.

Other assignments were available which would not have required the workers to cross picket lines and which would not put the employer in the position of keeping men on the payroll for whom there was no work.

Accordingly, the petition for enforcement of the Order of The National Labor Relations Board in the instant case is hereby granted.