NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

WILLIAM S. CARROLL, INC.,
Respondent.

No. 77–1555.

United States Court of Appeals,
First Circuit.

Argued May 4, 1978.

Decided June 23, 1978.

Norman A. Moscowitz, Atty., Washington, D. C., with whom John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and Michael S. Winer, Atty., Washington, D. C., were on brief, for petitioner.

William D. Barry, Medford, Mass., with whom Bishop & Ahern, Medford, Mass., was on brief, for respondent.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

The question posed by this case is whether the discharge and failure to rehire an employee who refused to cross a picket line established by a union of which he was not a member at the premises of one of his employer's customers violated § 8(a)(1) of the National Labor Relations Act (the Act). The National Labor Relations Board (the Board) seeks enforcement of its order directing the employer to reinstate the employee with back pay and to cease and desist from restraining its employees in the exercise of their rights.

Respondent operates a school bus and charter service in Watertown and Brookline, Massachusetts. When Lawrence Rosenberg, the employee in question, reported to the Watertown terminal for his first day of work, Anthony Andre, the dispatcher, instructed him to pick up passengers at the Star Market at 1717 Beacon Street and deliver them to 1842 Beacon Street. Rosenberg remarked, "1842 Beacon, that's Pre-Term, isn't it? Aren't they on strike?" Andre called the Brookline terminal dispatcher, Joe Quaterone, who said only that there was a labor problem and Andre should tell Rosenberg to follow instructions. When Rosenberg indicated his reluctance to undertake the job, Andre offered to drive the charter himself, but Rosenberg ultimately agreed to go.

On his way to pick up his passengers Rosenberg passed the Pre-Term building, saw a group of approximately 20 picketers, and stopped to find out whether his bus was intended to cross their picket line. Informed by one of the picketers that respondent's buses had previously done so, Rosenberg attempted to contact the dispatcher to protest, but was unable to find a telephone in working order. He returned to Pre-Term and told the picketers that because this was his first day on the job he could not refuse to bring the passengers to Pre-Term, but that he would not drive them across the picket line.

Rosenberg then drove the bus to the Star Market, where a group of women was waiting. Again he was confronted with the purpose of his mission, this time by one of his passengers. Two police cars arrived to escort the bus the short distance back to Pre-Term. When the lead car reached the Pre-Term building, it turned down a side street. Rosenberg followed it around the corner, but brought the bus to a halt. An exchange between Rosenberg and several of the picketers followed, prompting one police officer to board the bus to find out what the problem was. Rosenberg informed the officer he would not cross the picket line.

Meanwhile a group of picketers had surrounded the bus and begun shouting at the passengers and at Rosenberg. Again the police instructed Rosenberg to follow them to the parking lot behind the Pre-Term building. Rosenberg moved the bus forward one or two bus lengths, but again stopped, insisting that he would honor the picket line. Amid increasing chaos the police finally instructed him to back the bus out to Beacon Street, where the police formed a cordon so that the passengers could be discharged.

Rosenberg then returned to the terminal and expressed to the dispatcher his displeasure at having been expected to cross the picket line. The latter indicated that Rosenberg had not handled the situation properly but sent him on two other charters, both of which took place without incident.

When Rosenberg reported for work the following day, the dispatcher told him he had been suspended because of the episode at Pre-Term. A telephone call to the company's terminal office revealed that he had in fact been dismissed, the cited reason being his refusal to finish the charter to Pre-Term. Later that day Rosenberg called the company owner to ask for his job back, but the owner refused on the ground that Rosenberg had not completed his assigned task.

Under the Board's analysis, the crucial issue in this case is whether an employee's refusal to cross a picket line directed at a stranger employer is "concerted activit[y] for . . . mutual aid or protection" secured by section 7 of the Act, 29 U.S.C. § 157. We have previously expressed doubts that such conduct is protected, *see NLRB v. C. K. Smith & Co., Inc.*, 569 F.2d 162, 165 n. 1 (1st Cir. 1977). Other circuits are divided on the issue. Two have concluded that the refusal to cross a picket line is not protected activity, *see Montana-Dakota Utilities Co. v. NLRB*, 455 F.2d 1088, 1089 (8th Cir. 1972); *NLRB v. Illinois Bell Telephone Co.*, 189 F.2d 124, 128 (7th Cir. 1951). The Second, Fifth and District of Columbia Circuits disagree, *see NLRB v. Alamo Express, Inc.*, 430 F.2d 1032, 1036 (5th Cir. 1970); *Teamsters, Chauffeurs, Warehousemen, Helpers & Food Processors, Local Union 657 v. NLRB*, 139 U.S.App.D.C. 20, 429 F.2d 204, 205 (1970) (per curiam); *NLRB v. Rockaway News Supply Co.*, 197 F.2d 111, 113 (2d Cir. 1952), *aff'd on other grounds*, 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832 (1953).

The Fourth and Sixth Circuits have concluded that section 7 protects the right to honor a picket line, but only in the factual context of picketing the employee's own employer, *see NLRB v. Virginia Stage Lines, Inc.*, 441 F.2d 499 (4th Cir. 1971); *NLRB v. Union Carbide Corp.*, 440 F.2d 54 (4th Cir. 1971); *NLRB v. Difco Laboratories, Inc.*, 427 F.2d 170 (6th Cir. 1970) (per curiam). Research has not disclosed cases in those circuits posing the precise question here. In the one Ninth Circuit case in which the picket was directed at an employer other than that of the discharged employee, the issue whether the employee's

refusal to cross it was protected had not been raised prior to the appeal, and thus was not considered, *see NLRB v. Swain & Morris Construction Co.*, 431 F.2d 861, 862 (9th Cir. 1970); *see also NLRB v. John Stepp's Friendly Ford, Inc.*, 338 F.2d 833 (9th Cir. 1964) (refusal to cross picket at employer's premises).

■ We need not decide whether honoring a picket line is protected conduct, for even if it is, the Board could not on this record carry the day. Those circuits which have agreed with the Board's position have nonetheless concluded that the act does not always prevent an employer from discharging an employee who engages in such activity in the course of his job, *see NLRB v. Alamo Express, Inc., supra*, 430 F.2d at 1036; *Teamsters, Chauffeurs & Helpers Local 79 v. NLRB*, 117 U.S.App.D.C. 84, 325 F.2d 1011, 1012 (1963); *NLRB v. Rockaway News Supply Co., supra*, 197 F.2d at 113. Whether or not the Act has been violated depends on a case by case balancing of the right of the employee to express his union sympathies and the right of the employer to conduct his business, *see NLRB v. Alamo Express, Inc., supra*, 430 F.2d at 1036.

■ This brings into question the standard against which these competing interests are to be weighed. In justifying its finding that respondent violated section 8(a)(1),[1] the Board argues that Rosenberg was in the same position as an employee engaged in a protected economic strike and thus "[t]he burden of establishing facts showing that the employer's business need to replace the employee outweighs the employee's right to engage in protected activity rests with the employer and is a substantial one."[2] We find it unnecessary to turn

---

1. We do not quarrel with the proposition that the discharge in this case arguably established a section 8(a)(1) violation. This is so because firing an employee who has asserted protected rights may chill other employees contemplating similar conduct sympathetic to unionism, *see Signal Oil & Gas Co. v. NLRB*, 390 F.2d 338, 343 (9th Cir. 1968).

2. Slightly different approaches to the standard and burden of proof were taken in the several proceedings below. The administrative law

judge assumed without deciding that respondent had a business justification for discharging and refusing to rehire Rosenberg. He concluded that respondent had nonetheless violated section 8(a)(1) because "a discharge motivated in part by an employee's exercise of Section 7 rights is a violation of the Act, even though a valid cause may also be present." Modifying the administrative law judge's order, the Board took the firm position that Rosenberg had not committed sanctionable conduct.

to analogy before examining the precedent more directly in point.[3] Other courts reviewing a claim that an employee was discharged for refusing to cross a picket line, in violation of the Act, have already set the standard. It is diametrically opposed to what the Board asserts. Once the employer has demonstrated a legitimate business reason for the dismissal, the burden shifts to the Board to establish that the primary motivation for the discharge was to penalize the employee for his conduct sympathetic to picketers, see *NLRB v. Swain & Morris Construction Co., supra,* 431 F.2d at 862; *NLRB v. Alamo Express, Inc., supra,* 430 F.2d at 1036. See also *NLRB v. Southern Electronics Co.,* 430 F.2d 1391, 1392 (6th Cir. 1970) (per curiam); *Southwest Latex Corp. v. NLRB,* 426 F.2d 50 (5th Cir. 1970); *John Klann Moving & Trucking Co. v. NLRB,* 411 F.2d 261, 263 (6th Cir. 1969).

That standard accords with what, as we have announced with monotonous repetition, governs allegations that discharge of an employee violates section 8(a)(3) of the Act,[4] see *NLRB v. Rich's of Plymouth, Inc.,* 578 F.2d 880 (1st Cir. 1978); *Coletti's Furniture, Inc. v. NLRB,* 550 F.2d 1292, 1293 (1st Cir. 1977) (per curiam); *NLRB v. Fibers Int'l Corp.,* 439 F.2d 1311, 1315 (1st Cir. 1971); *NLRB v. Billen Shoe Co.,* 397 F.2d 801, 803 (1st Cir. 1968); *NLRB v. Lowell Sun Publishing Co.,* 320 F.2d 835, 842 (1st Cir. 1963). That other courts have applied it in this context is not surprising,

since violations of section 8(a)(1) and section 8(a)(3) are often charged in tandem, see *NLRB v. Alamo Express, Inc., supra,* 430 F.2d at 1034; *Truck Drivers & Helpers Local 728 v. NLRB,* 124 U.S.App.D.C. 289, 290, 364 F.2d 682, 683 (1966) (per curiam); *NLRB v. Rockaway News Supply Co., supra,* 197 F.2d at 112. Research discloses nothing in the precedents to suggest that where dismissal of an employee is alleged to violate section 8(a)(1) alone, the burden of proof is the exact opposite of what it would have been if a section 8(a)(3) infraction had been pleaded as well, or in its place. To permit such a technical distinction would make it possible for the Board to avoid its burden of proof merely by framing its allegations exclusively in terms of section 8(a)(1).[5] We therefore conclude that the Board erred in placing the burden on respondent to justify the discharge.

■ In previous instances where the Board has applied an incorrect standard, we have analyzed the record ourselves to ascertain whether the proper standard had nonetheless been met, see *Coletti's Furniture, Inc. v. NLRB, supra,* 550 F.2d at 1293. The Board's opinion has not assisted us in this endeavor for, in concluding that refusal to cross a picket line is protected activity for which an employee cannot be fired, the Board ignored the issue of whether Rosenberg could have honored the picket line in a different manner from the way in which he

For the Board, neither respondent's good faith mistaken belief that Rosenberg had engaged in misconduct nor a substantiated assertion that respondent would have lost the Pre-Term account because of it would justify the dismissal. Both formulations placed the burden of proof on the employer to establish the dominant motive for the discharge was a valid business reason.

3. There is some question as to how close the Board's suggested analogy is to the situation here. An economic strike is directed at the primary employer, with whom the employee has a right to a collective bargaining relationship and a direct interest in the conditions of employment, see *NLRB v. Illinois Bell Telephone Co.,* 189 F.2d 124, 128 (7th Cir. 1951). Under the circumstances of this case, by contrast, the action is aimed at a third party and the employee's interest in its success is more attenuated. Moreover, if conducted by a labor

organization, rather than an individual, the refusal to deal with an employer engaged in a struggle with its employees would arguably amount to an impermissible secondary boycott, see *NLRB v. Rockaway News Supply Co.,* 197 F.2d 111, 114 (2d Cir. 1952), *aff'd on other grounds,* 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832 (1953).

4. Section 8(a)(3) prohibits "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization", 29 U.S.C. § 158(a)(3).

5. We observe in passing that the unfair labor practice charge in this case originally included a claim under section 8(a)(3) as well as section 8(a)(1) but was later amended to drop the section 8(a)(3) allegation.

actually did so. Yet, as we have noted, even the precedent which supports the premise that such conduct is protected requires analysis of the specific facts and competing interests in the case. Based on our review of the record, we do not find substantial evidence which demonstrates that Rosenberg's expressed sympathy for the Pre-Term picketers was the dominant reason for his discharge.

Rosenberg did not indicate his intent to honor the picket line at a time that would have permitted respondent to detail another employee to do the job. Rather, suspecting that driving the charter involved crossing a picket, and given an opportunity to back out when the dispatcher offered to go in his stead, Rosenberg nonetheless accepted the assignment, see *NLRB v. Swain & Morris Construction Co., supra,* 431 F.2d at 862. Even if, as was argued to the administrative law judge, at the time he agreed to go, Rosenberg was uncertain that the charter was bound for Pre-Term and not one of the other businesses in the same building, he later learned at two different times that the charter was intended to cross the picket line. The picketers told him the purpose of the charter on the way to the pickup, as did his passengers when they boarded his bus. Although he attempted unsuccessfully to reach the dispatcher by telephone, Rosenberg did not withdraw. Instead, as the administrative law judge put it, he decided to "play it by ear" and drove the loaded bus to Pre-Term.

Rosenberg was beyond the point of no return when he belatedly decided he could not finish the job he had undertaken. Having turned the corner beside the Pre-Term building he brought the bus to a halt and informed the police he would not cross the picket line. The shouting match that ensued between the picketers, the bus passengers, the police, and Rosenberg necessitated formation of a police cordon outside the Pre-Term building to protect the passengers.

A rational employer whose business includes driving school children could understandably be unwilling to entrust his customers to a driver who demonstrated such poor judgment. Rosenberg had no history of good performance to offset his failings in this instance. Respondent's asserted reason for dismissing him thus accords with common sense.[6] See *NLRB v. Rich's of Plymouth, Inc., supra* 578 F.2d 880.

There is, moreover, no background of employer hostility toward unionization which might indicate that the discharge was in fact discriminatorily motivated. There is no evidence that respondent was engaged in conflict with a labor organization or had been charged with other unfair labor practices, see *Local 657 v. NLRB, supra,* 429 F.2d at 205; *NLRB v. Illinois Bell Telephone Co., supra,* 189 F.2d at 129. Nothing in the record suggests that respondent harbored any anti-union sentiment, see *NLRB v. Swain & Morris Construction Co., supra,* 431 F.2d at 862; *Local 79 v. NLRB, supra,* 117 U.S.App.D.C. at 85, 325 F.2d at 1012. On the contrary, testimony that the Brookline terminal dispatcher, who had similarly declined to cross the Pre-Term picket line, but was not discharged suggests that Rosenberg was in fact fired for the reason respondent asserted: that he had behaved irresponsibly, see *NLRB v. Rockaway News Supply Co., supra,* 197 F.2d at 114 n. 4.

The end result of this analysis is that respondent produced substantial evidence that a legitimate business reason motivated the decision to fire Rosenberg, and the Board has produced insufficient evidence to the contrary. On such a record we cannot conclude that anti-union animus was the controlling reason for the discharge.

*Enforcement denied.*

---

**6.** Respondent also argued before the administrative law judge that he had fired Rosenberg because his misconduct had cost respondent the Pre-Term account. There is some evidence that respondent independently decided to cease doing business with Pre-Term. Because we conclude respondent's assertion that Rosenberg engaged in misconduct worthy of discharge was sufficient to shift the burden of proof to the Board we need not resolve this factual conflict.