491 F.2d 367
 85 L.R.R.M. (BNA) 2257, 73 Lab.Cas. P 14,231
 MARRIOTT CORPORATION, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
INTERNATIONAL ASSN. OF MACHINISTS & AEROSPACE WORKERS,
AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
LUFTHANSA GERMAN AIRLINES, Respondent.
 Nos. 72-1990, 72-2129, 72-2207.
 United States Court of Appeals, Ninth Circuit.
 Jan. 9, 1974
Rehearing Denied Feb. 7, 1974.
 
 Marcel Mallet-Prevost, Asst. Gen. Counsel, NLRB, Allison W. Brown, Jr. (argued), Washington, D.C., Abraham Siegel, Director, Region 31, NLRB, Los Angeles, Cal., for NLRB.
 David A. Maddux, Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., A.D. Gallay (argued), Fellner & Rovins, New York City, for Lufthansa.
 Robert M. Simpson, Rose, Klein & Marias, Los Angeles, Cal., Plato E. Papps, Washington, D.C., for IAM.
 Charles A. Kothe, Kothe & Eagleton, Richard L. Barnes (argued), Tulsa, OKL., Pillsbury, Madison & Sutro, San Francisco, Cal., Wayne S. Bishop, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for Marriott Corp.
 Before TRASK and GOODWIN, Circuit Judges, and THOMPSON,* District judge.
 ALFRED T. GOODWIN, Circuit Judge:
 
 
 1
 The National Labor Relations Board seeks enforcement of an order vitiating a 'hot cargo' agreement between an airline-employer subject to the Railway Labor Act, 45 U.S.C. 151 et seq., and a union representing catering employees. In the companion case, the food-service contractor injured by the boycott seeks damages. The administrative decision is reported as Machinists Union, 197 N.L.R.B. No. 18, 80 L.R.R.M. 1305 (May 31, 1972).
 
 
 2
 The Marriott Corporation alleged unfair labor practices under 8(e) of the Labor-Management Relations Act (LMRA), 1947, 29 U.S.C. 158(e),[1] by Lufthansa German Airlines and the International Association of Machinists and Aerospace Workers, AFL-CIO (IAM), the exclusive collective-bargaining representative of Lufthansa's catering employees. IAM appeals the NLRB ruling which found an unfair labor practice, and the Board petitions for enforcement of its order against both IAM and Lufthansa.
 
 I. JURISDICTION
 
 3
 The jurisdiction of the NLRB was asserted under 8(e) and 10(a) of the LMRA, 29 U.S.C. 158(a) and 160(a). The union contends that the Board has no jurisdiction because one party to the challenged contract is a regulated carrier under the Railway Labor Act.
 
 
 4
 Since 1961, Lufthansa has recognized IAM as the exclusive bargaining representative for all Lufthansa employees engaged in its food catering department. Lufthansa has employed its own catering crews in New York City, and has contracted for catering services at other airports from which it operates. This practice was reflected in collective-bargaining agreements executed by Lufthansa and IAM for the years 1964-70. As of 1969, Lufthansa had contracts with Marriott, a nonunion caterer, for Chicago and Los Angeles food service, and was discussing a contract for certain John F. Kennedy Airport catering services. IAM voiced its disapproval of Lufthansa's contracts with a nonunion caterer, and eventually, in 1971, Lufthansa and IAM executed a renewal collective-bargaining agreement containing a provision which in effect required Lufthansa to cease doing business with Marriott and to contract only with union caterers. When Lufthansa informed Marriott that the airline would have to terminate the Los Angeles and Chicago contracts, Marriott instituted these proceedings.
 
 
 5
 For the purposes of the LMRA, a 'labor organization' is defined in terms of its function as between 'employees' and 'employers,' 29 U.S.C. 152(5), and 'employees' and 'employers' are defined, in relevant part, as not including 'any person subject to the Railway Labor Act.' 29 U.S.C. 152(2), (3). Lufthansa is a carrier by air within the meaning of 201 of the Railway Labor Act, 45 U.S.C. 181, and, therefore, is not an employer within the meaning of 2(2) of the Labor-Management Relations Act.
 
 
 6
 Based upon its findings that 88 per cent of IAM's members are employees within the meaning of 2(3) of the LMRA, and that more than 96 per cent of IAM's collective-bargaining agreements are with employers within the meaning of 2(2) of the Act, the Board concluded that IAM is a labor organization within the meaning of 2(5) of the Act. The Board further found that the IAM-Lufthansa agreement was primarily aimed at Marriott and Marriott's status as a nonunion caterer, and was not for the purpose of preserving work for unit employees, and therefore constituted an unlawful hot-cargo agreement. See Woodwork Manufacturers Ass'n v. NLRB, 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967).
 
 
 7
 Because the findings made by the Board were supported by substantial evidence, and because the inferences drawn by the Board were reasonable, we have no basis to deny enforcement of the Board's order. See ICC v. Louisville & N.R.R., 227 U.S. 88, 94, 33 S.Ct. 185, 57 L.Ed. 431 (1913); Universal Camera Corp. v. NLRB, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. (1951); NLRB v. Winkel Motors, Inc., 443 F.2d 38 (9th Cir. 1971); NLRB v. Millmen & Cabinet Makers, Local 550, 367 F.2d 953 (9th Cir. 1966).
 
 
 8
 The Board was required to decide whether Congress, in enacting 8(e) of the LMRA, intended to outlaw hot-cargo agreements only when they were executed by statutory 'labor organizations' and 'employers' or whether, despite the seemingly clear language of the section, Congress intended to enact in 8(e) a ban on hot-cargo agreements as broad as the ban of 8(b)(4)(B), which applies not merely to any statutory 'employer' but to 'any person.'
 
 
 9
 The Board, after analyzing the case law[2] and legislative history concluded that the latter, broader interpretation of 8(e) was correct and that the Board therefore had the power under 8(e) to rule upon the IAM-Lufthansa agreement. The Board found support for this conclusion in the fact that this case involved not a 'pure and simple' dispute between an air carrier and its employees' union over the terms and conditions of the airline employees' employment, but rather a dispute between the air carrier and the union, on the one hand, and a noncarrier (Marriott) on the other, with regard to employment conditions affecting noncarrier employees. Cf. Railroad Trainmen v. Terminal Co., 394 U.S. 369, 377, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969); Teamsters Union v. New York, N.H. & H.R. Co., 350 U.S. 155, 76 S.Ct. 227, 100 L.Ed. 166 (1956).
 
 
 10
 We have examined the reasoning of the majority of the Board in light of the statutory language, the related legislative history, and the case law and find it convincing. Whether the issue involves a jurisdictional determination or a substantive application, the experienced judgment of the Board is entitled to great weight on such questions of law and statutory interpretation. See Medo Photo Supply Corp. v. NLRB, 321 U.S. 678, 681-682 n. 1, 64 S.Ct. 830, 88 L.Ed. 1007 (1944); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); NLRB v. Retail Clerks Int'l Ass'n, 243 F.2d 777, 779 n. 2 (9th Cir. 1956). The cease-and-desist order is entitled to enforcement.
 
 
 11
 II. COMPENSATORY DAMAGES AND LITIGATION COSTS
 
 
 12
 Marriott sought from the Board an order requiring the union to pay compensatory damages for lost business and costs of redress. The Board's order failed, without comment, to provide such relief. Section 10(c) of the LMRA, 29 U.S.C. 160(c), authorizing the Board to enjoin employers and unions from violating the Act and to order them to take affirmative action, has been construed as giving the Board broad authority to create new remedies. See e.g., Southern S.S. Co. v. NLRB, 316 U.S. 31, 46, 62 S.Ct. 886, 86 L.Ed. 1246 (1942).
 
 
 13
 Whether and to what extent damages may serve the policies of the Act in a given case is a complex problem for the Board to decide in light of its administrative experience and knowledge. The primary purpose of the Act is to protect the public interest and the policies of the Act by mitigating the effects of the violation and preventing future violations. Compensation, like any other remedy, should be ordered only when it will serve this primary purpose. See, e.g., UAW v. Russell, 356 U.S. 634, 642-643, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958).
 
 
 14
 In this case, the language of 8 (e) at least supports the view that the Board might not have jurisdiction. It was only after resort to the legislative history and careful consideration thereof that the Board settled upon a reading of that section which rendered the Lufthansa-IAM agreement an unfair labor practice within the Board's jurisdiction. We cannot say, therefore, that the Board abused its discretion in not awarding damages. Accordingly, we do not revise the Board's order. We express no opinion on the power of the Board to award such affirmative relief. See Lipman Motors v. NLRB, 451 F.2d 823, 828-829 (2d Cir. 1971); Herald Co. v. NLRB, 444 F.2d 430 (2d Cir.), cert. denied 404 U.S. 990, 92 S.Ct. 532, 30 L.Ed.2d 541 (1971). Cf. Food Store Employees, Local 347 v. N.L.R.B., 155 U.S.App.D.C. 101, 476 F.2d 546 (1973).
 
 
 15
 In its brief in this court, Marriott has for the first time requested reimbursement for litigation expenses. Section 10(e) of the LMRA, 29 U.S.C. 160(e), provides that no objection not urged before the Board may be considered by the court unless excused by extraordinary circumstances. Marriott has not shown the necessary extraordinary circumstances to excuse its failure to request costs and attorney fees before the Board. See NLRB v. Ochoa Fertilizer Corp., 368 U.S. 318, 322, 82 S.Ct. 344, 7 L.Ed.2d 312 (1961); NLRB v. Swain & Morris Constr. Co., 431 F.2d 861 (9th Cir. 1970). Therefore, Marriott's request for reimbursement of costs and attorney fees must be denied.
 
 
 16
 The Board will prepare and submit a judgment enforcing its order.
 
 
 
 *
 The Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation
 
 
 [1]
 This section was added to the Act in 1959, and, in relevant part, provides:
 'It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void * * *.'
 Section 8(b)(4)(B), 29 U.S.C. 158(b)(4)(B), forbids a labor organization to cause any individual employed by any person to engage in certain conduct designed to force or require any person to cease doing business with any other person.
 
 
 [2]
 Woodwork Manufacturers Ass'n v. NLRB, 386 U.S. 612, 87 S.Ct. 1250, 18 LEd.2d 357 (1967); Railroad Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969)