**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,**

v.

**OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA, Defendant-Appellee.**

**No. 75–1705.**

United States Court of Appeals, Ninth Circuit.

May 11, 1976.

John Schmelzer, EEOC, Washington, D. C. (argued), for plaintiff-appellant.

Dennis H. Vaughn (argued), Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for defendant-appellee.

## OPINION

Before WRIGHT, KILKENNY and TRASK, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

In this Title VII action the Equal Employment Opportunity Commission (EEOC) appeals from the district court's order of dismissal. We reverse and remand.

## I.

### PROCEEDINGS BELOW

On December 27, 1970, Tamar Edelson filed with the EEOC a charge against Occidental Life Insurance Company (Occidental), alleging that she had been discriminated against because of her sex. She specified that "the most recent date on which this discrimination took place" was October 1, 1970, the date of her discharge by Occidental.

The EEOC referred the charge to the California Fair Employment Practices Commission, in accordance with the provisions of Section 706(c) [42 U.S.C. § 2000e–5(c)]. When that agency took no action, the charge was formally filed with the EEOC on March 9, 1971.

The EEOC undertook an investigation and, on February 25, 1972, its District Director issued Findings of Fact that Occidental had discriminated against Ms. Edelson and also had discriminated against many other employees through a variety of practices and policies. Occidental filed exceptions to the findings on March 23, 1972. The EEOC issued its "Reasonable Cause" Determination on February 8, 1973 and during the following year, held a conciliation meeting with Occidental.

When that effort proved unsuccessful, the EEOC filed this action in district court on February 22, 1974.

That court granted Occidental's motion to dismiss, finding that:

1. The EEOC has no authority to file suit more than 180 days after the filing of the underlying charge, or where, as here, the charge was filed prior to the 1972 amendments to Title VII of the Civil Rights Act of 1964, more than 180 days after the effective date of such amendments;

2. Alternatively, the EEOC was barred from filing this suit by the California statute of limitations;

3. Alternatively, the EEOC was barred from proceeding on paragraphs 8(b) and 9(c) of its complaint because the allegations contained therein were outside the scope of the underlying charge; and

4. In any event, the EEOC was barred from seeking back pay for any alleged violations occurring more than two years prior to the filing of the underlying charge.

By its appeal herein, the EEOC challenges only the first three findings by the court.

We hold:

(1) The 180-day language of Section 706(f)(1) [42 U.S.C. § 2000e–5(f)(1)] does not constitute a limitation upon the EEOC's ability to sue in its own name;

(2) This action is not barred by any state limitations period; and

(3) The EEOC properly included subparagraphs 8(b) and 9(c) in its complaint.

## II.

### THE 180–DAY LANGUAGE OF SECTION 706(f)(1)

■ Section 706(f)(1) [42 U.S.C. § 2000e–5(f)(1)] states in pertinent part: [1]

. . . [I]f within one hundred and eighty days from the filing of such charge . . . the [EEOC] has not filed a civil action under this section . . . the [EEOC] . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the [EEOC], by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.

The district court found that the above statute precluded the EEOC from bringing this action.

The statute on its face contains no express limitation upon suit *by the EEOC*. Rather, it precludes civil action by the charging party for 180 days so that the EEOC may during that period pursue conciliation.[2] If, after 180 days, the EEOC has neither filed a civil action nor achieved conciliation, the charging party may demand a "right-to-sue" letter. On receipt of it, the charging party has 90 days within which to sue. Should such private action be filed, the EEOC would apparently be restricted to intervention.[3]

However, should the person concerned choose not to sue during the allotted 90 days, the EEOC is not prohibited from suing thereafter. The statute in no way limits the time within which it must sue, so long as the charging party has not done so.[4]

This issue has been before the Courts of Appeals for the Third, Fourth, Fifth, Sixth, Eighth and Tenth Circuits. All have ruled that Section 706(f)(1) [42 U.S.C. § 2000e–5(f)(1)] does not preclude suit by the EEOC after the 180-day period has run.[5]

Finding this avalanche of authority most persuasive, we adopt the rule that the 180-day language of Section 706(f)(1) does not constitute a limitation upon the EEOC's ability to sue in its own name. We conclude that the district court erred in barring this suit on the basis of the 180-day language in Section 706(f)(1).

## III.

### APPLICABILITY OF RELEVANT STATE LIMITATIONS PERIOD

The district court held alternatively that the EEOC suit was barred by the one-year California statute of limitations found in California Code of Civil Procedure § 340(3).

We have already determined that Section 706(f)(1) [42 U.S.C. § 2000e–5(f)(1)] does not require the EEOC to file suit within 180

---

1. Before the 1972 amendment of Section 706(f)(1), the relevant time periods were 30 days for both the filing of the charge with the EEOC, and filing suit after receipt of a right-to-sue letter.

2. The charging party may sue before the 180-day period has run if:
 (a) The EEOC finds no reasonable cause during that time period [42 U.S.C. § 2000e–5(b)]; or
 (b) The EEOC dismisses the charge during that time period [42 U.S.C. § 2000e–5(f)(1)].

3. H.R.Rep.No.92–238, 92nd Cong., 1st Sess. 12 (1971), 1972 U.S.Code Cong. & Admin.News, p. 2148, *quoted in Equal Employment Opportunity Comm'n v. Duval Corp.*, 528 F.2d 945, 948 n.4 (10th Cir. 1976).

4. The sole exception is that the EEOC must wait 30 days from the filing of the charge before filing suit. [42 U.S.C. § 2000e–5(f)(1)].

5. *Equal Employment Opportunity Comm'n v. Duval Corp.*, 528 F.2d 945, 947 (10th Cir. 1976); *Equal Employment Opportunity Comm'n v. Meyer Bros. Drug Co.*, 521 F.2d 1364, 1365 (8th Cir. 1975); *Equal Employment Opportunity Comm'n v. E. I. duPont de Nemours and Co.*, 516 F.2d 1297 (3rd Cir. 1975); *Equal Employment Opportunity Comm'n v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1356–59 (6th Cir. 1975); *Equal Employment Opportunity Comm'n v. Louisville and Nashville R. R.*, 505 F.2d 610 (5th Cir. 1974); *Equal Employment Opportunity Comm'n v. Cleveland Mills*, 502 F.2d 153 (4th Cir. 1974). *See also Equal Employment Opportunity Comm'n v. Local 41, Bartenders' International Union*, 369 F.Supp. 827, 829–31 (N.D.Cal.1973).

days of the date the private charge is filed with that agency. There being no other portion of Title VII susceptible of interpretation as a limitation on the time within which the EEOC must bring suit, we find that there is simply no governing federal limitations period. *See Equal Employment Opportunity Comm'n v. Griffin Wheel Co.,* 511 F.2d 456, 458, *aff'd on rehearing,* 521 F.2d 223 (5th Cir. 1975).

 It is well established that in a *private* civil rights action, where Congress has not provided a statute of limitations, the state statute applied to similar litigation will be applied to the federal action. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295, 302–03 (1975), and cases cited therein; *Griffin v. Pacific Maritime Ass'n,* 478 F.2d 1118, 1119 (9th Cir. 1973).

 In its complaint the EEOC seeks both injunctive relief and back pay. By its prayer for injunctive relief the EEOC promotes *public* policy and seeks to vindicate rights belonging to the United States as sovereign. Thus, the EEOC's request for injunctive relief is not subject to any state limitations period. *Griffin Wheel, supra,* 511 F.2d at 459; *Kimberly-Clark, supra,* 511 F.2d at 1359–60. *Cf. United States v. Summerlin,* 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940). The district court erred insofar as it barred EEOC's request for injunctive relief on the basis of the California limitations period.[6]

We consider the request for back pay. Occidental argues that, even though the EEOC is party plaintiff, "[i]nsofar as the . . . suit constitutes a proper legal conduit for the recovery of sums due individual citizens rather than the treasury, it is a private and not a public action." *United States v. Georgia Power,* 474 F.2d 906, 923 (5th Cir. 1973), *quoted in Griffin Wheel, supra,* 511 F.2d at 458.

Since we cannot agree that EEOC's request for back pay must be treated as "private" in nature, we believe the district court erred in applying the California limitations period to bar the back pay request.

Our starting point is the recent statement of the Supreme Court in *Franks v. Bowman Transp. Co.,* —— U.S. ——, 96 S.Ct. 1251, 47 L.Ed.2d 444, 44 USLW 4356 (1976): "[C]laims under Title VII involve the vindication of a major public interest . . ." *Id.* at —— n.40, 96 S.Ct. at 1271, 47 L.Ed.2d at 469, 44 USLW at 4365 n.40, *quoting* Section-By-Section Analysis, accompanying the Equal Employment Opportunity Act of 1972—Conference Report, 118 Cong.Rec. 7166, 7168 (1972).

The Court in *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), discussed in some detail the nature of Title VII claims for back pay:

> As the Court observed in *Griggs v. Duke Power Co.,* 401 U.S. [424], at 429–430, 91 S.Ct. 849, at 853, 28 L.Ed.2d 158, 163, the primary objective [of Title VII] was a prophylactic one:
>
> > "It was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees."
>
> Backpay has an obvious connection with this purpose. If employers faced only the prospect of an injunctive order, they would have little incentive to shun practices of dubious legality. It is the reasonably certain prospect of a backpay award that "provide[s] the spur or catalyst which causes employers and unions to self-examine and to self-evaluate their employment practices and to endeavor to eliminate, so far as possible, the last vestiges of an unfortunate and ignominious page in this country's history." *United States v. N. L. Industries, Inc.,* 479 F.2d 354, 379 (CA8 1973).
>
> It is *also* the purpose of Title VII to make persons whole for injuries suffered on account of unlawful employment discrimination.

*Id.* at 417–18, 95 S.Ct. at 2371, 45 L.Ed.2d at 297. (Emphasis added.)

---

**6.** We express no opinion as to which, if any, state limitations statute would apply had an individual or a class, rather than the EEOC, been party plaintiff.

That an award of back pay promotes the primary statutory objective of deterrence [7] was also noted by the Sixth Circuit in *Meadows v. Ford Motor Company*, 510 F.2d 939, 948 (6th Cir. 1975).

The *Moody* Court noted that "[t]he back-pay provision [of Title VII] was expressly modeled on the backpay provision of the National Labor Relations Act." 422 U.S. at 419 and n.11, 95 S.Ct. at 2372, 45 L.Ed.2d at 297. It is established doctrine that a back pay order under Section 10(c) of the National Labor Relations Act [29 U.S.C. § 160(c)] " 'is a reparation order designed to vindicate the public policy of the statute by making the employees whole for losses suffered on account of an unfair labor practice.' " *National Labor Relations Board v. J. H. Rutter-Rex Mfg. Co.*, 396 U.S. 258, 263, 90 S.Ct. 417, 420, 24 L.Ed.2d 405, 410 (1969), *quoting Nathanson v. National Labor Relations Board*, 344 U.S. 25, 27, 73 S.Ct. 80, 82, 97 L.Ed. 23, 28–29 (1952).

It is true, of course, that whenever a party obtains relief under a federal statute, public policy is vindicated even though direct, immediately cognizable benefits may flow only to the individual. Thus, for example, private action under Title 42 U.S.C. § 1981 is subject to state limitations periods despite the fact that each recovery may be said to promote the public policy embodied in the statute. *See Johnson, supra*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

But certain federal acts, such as the National Labor Relations Act, are intended to be broadly prophylactic as well as remedial. *See* Section 1 [29 U.S.C. § 151]. Several circuits, including our own, have recognized that back pay orders promote the prophylactic as well as the remedial purposes of the National Labor Relations Act.[8]

The National Labor Relations Board (NLRB) does not pursue the "adjudication of private rights." Rather, it "acts in a public capacity to give effect to the declared public policy of the Act . . . ." *National Licorice Co. v. National Labor Relations Board*, 309 U.S. 350, 362, 60 S.Ct. 569, 576, 84 L.Ed. 799, 810 (1940). "The fact that these proceedings [may] operate to confer an incidental benefit on private persons does not detract from this public purpose." *Nabors v. National Labor Relations Board*, 323 F.2d 686, 688–89 (5th Cir. 1963).

Accordingly, the NLRB, as an agency of the United States seeking enforcement of public rights, is not bound by state limitations statutes even when seeking back pay. *Nabors, supra*, at 688. *See also J. H. Rutter-Rex Mfg. Co. v. National Labor Relations Board*, 399 F.2d 356, 358, 362, 364 (5th Cir. 1968), *rev'd on other grounds*, 396 U.S. 258, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969).[9]

The Civil Rights Act of 1964 grew out of Congressional awareness of the continued, pervasive discrimination against minorities, particularly Negroes, in voting, access to public facilities, public education and employment. As the Committee on the Judiciary of the House of Representatives reported:

Considerable progress has been made in eliminating discrimination in many areas . . . . Nevertheless, in the last dec-

---

7. The Court in *Moody* stated that "backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy *and* making persons whole for injuries suffered through past discrimination." 422 U.S. at 421, 95 S.Ct. at 2373, 45 L.Ed.2d at 299. (Emphasis added.)

8. *Marriott Corp. v. National Labor Relations Board*, 491 F.2d 367, 371 (9th Cir. 1974); *National Labor Relations Board v. United Marine Division, Local 33, National Maritime Union, AFL–CIO*, 417 F.2d 865, 868 (2nd Cir. 1969); *Trinity Valley Iron & Steel Co. v. National*

*Labor Relations Board*, 410 F.2d 1161, 1168 (5th Cir. 1969); *Nabors v. National Labor Relations Board*, 323 F.2d 686, 688–89 (5th Cir. 1963).

9. In *Rutter-Rex*, after ruling that state limitations statutes did not apply to the NLRB's action, the Fifth Circuit modified the Board's order because of inordinate administrative delay to the prejudice of defendant. The Supreme Court reversed and ordered enforcement of the back pay order in its entirety. In doing so, the Court assumed the inapplicability of state limitations periods.

ade it has become increasingly clear that progress has been too slow and that national legislation is required to meet a national need which becomes ever more obvious. . . . [This Act] is designed as a step toward eradicating significant areas of discrimination on a nationwide basis. It is general in application and national in scope.

H.Rep.No.914, 1964 U.S.Code Cong. & Admin.News, pp. 2391, 2393 (1964).

Thus, despite the existence in 1964 of such remedial statutes as the Civil Rights Acts of 1866, 1870 and 1871 [42 U.S.C. §§ 1981–88], Congress believed that some additional federal action was necessary to further the public objective of elimination of nationwide discrimination.[10] It decided that this objective could best be pursued by federal agency enforcement.

The original Section 706 of the Civil Rights Act of 1964, 78 Stat. 259–61, established an enforcement scheme to be implemented primarily by the EEOC. In 1972 Congress made it even more clear that "the vast majority of complaints will be handled through the offices of the EEOC or the Attorney General. . . ." Section-by-Section Analysis, *supra,* 118 Cong.Rec. at 7168.

The basic function of the EEOC, as with the NLRB, is to prevent and eliminate unlawful employment "practices and devices," primarily through "conference, conciliation, and persuasion." *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017–18, 39 L.Ed.2d 147, 155–56 (1974); Section 706(a) & (b) [42 U.S.C. § 2000e–5(a) & (b)]. The EEOC has the power to investigate, promote voluntary compliance, and bring suit upon failure of conciliation efforts.[11]

The EEOC vindicates public policy by suing in federal court, as does the NLRB by seeking enforcement of its orders in the courts of appeals. This is so regardless of the type of relief sought by either. As in labor law, so in Title VII law, the fact that private parties may benefit from public agency action does not detract from the public nature of those proceedings.

We are aware that the Fifth Circuit has reached a contrary result in at least two cases. *Griffin Wheel, supra,* 511 F.2d at 458–59; *Georgia Power, supra,* 474 F.2d at 922–23. We decline to follow its lead.

Both of those cases were decided before the Supreme Court decisions in *Moody, supra,* and *Franks, supra.* Moreover, the court in *Georgia Power,* 474 F.2d at 921, relied on the decision of the Supreme Court in *Rutter-Rex, supra,* but ignored the Court's statement therein that "back pay . . . is . . . designed to vindicate . . . public policy . . . ." 396 U.S. at 263, 90 S.Ct. at 420, 24 L.Ed.2d at 410.

*Occidental* directs our attention to the Court's decision in *Johnson, supra.* The Court there held that a federal cause of action under Title 42 U.S.C. § 1981 was governed by "the most appropriate [limitation period] provided by state law." 421 U.S. at 462, 95 S.Ct. at 1721, 44 L.Ed.2d at 302. However, *Johnson* involved a private claimant litigating under Section 1981, while this case involves a public agency enforcing Title VII rights.

Also, the *Johnson* Court did not qualify its holding according to the type of relief sought. Indeed, by discussing the availability under Section 1981 of "both equitable and legal relief," 421 U.S. at 460, 95 S.Ct. at 1720, 44 L.Ed.2d at 301, the Court intimated that state limitations periods would apply to private actions brought under Section 1981, regardless of the type of relief sought.

Earlier in this opinion we joined the Fifth and Sixth Circuits, in *Griffin Wheel* and *Kimberly-Clark* respectively, in ruling that state limitations periods do not govern the EEOC's request for injunctive relief.

---

10. In *Johnson, supra,* the Court made clear the "separate, distinct and independent" remedies available under Title 42 U.S.C. § 1981 on the one hand, and Title VII on the other. 421 U.S. at 461, 95 S.Ct. at 1720–21, 44 L.Ed.2d at 302.

11. Unlike the NLRB, the EEOC has no adjudicative powers. Yet the NLRB must itself seek court enforcement of its orders.

Nothing in *Johnson* dictates a contrary conclusion. Similarly, *Johnson* does not preclude us from concluding that a request by the EEOC for back pay, in vindication of public policy, is likewise immune from state limitations [12] periods.[13]

■ There are sound practical considerations in support of our conclusion. First, subjecting the EEOC to state limitations periods, often as short as one year,[14] would frustrate its attempts to resolve disputes by means of administrative "conference, conciliation, and persuasion," [42 U.S.C. § 2000e–5(b)], rather than by court action.[15]

Second, it would be cumbersome to determine the applicability of state limitations statutes according to the type of relief sought. As the Sixth Circuit stated in *Meadows, supra,* 510 F.2d at 945–46:

"[Back pay] may not properly be viewed as a mere adjunct of some more basic equity. It is properly viewed as an integral part of the whole of relief which seeks not to punish the respondent but to compensate the victim of discrimination."

It is unreasonable to give the EEOC an open ticket for equitable relief, but to impose time constraints on back pay claims even though they are "an integral part of the whole of relief" sought.

Third, Section 706(g) [42 U.S.C. § 2000e–5(g)] provides: "Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission [EEOC]." Thus, an employer need not produce past employment records except for the period of time the charge is pending, and the preceding two years.

■ Finally, despite the absence of a controlling federal limitations period, at least two factors are at work to minimize EEOC dalliance. First, the charging party may demand a right-to-sue letter should the EEOC fail to obtain voluntary compliance or to sue within 180 days of the original filing. Section 706(f)(1) [42 U.S.C. § 2000e–5(f)(1)]; *Johnson, supra,* 421 U.S. at 458, 95 S.Ct. at 1719, 44 L.Ed.2d at 300. Second, in extreme cases a federal district court could compel agency action. *See* Sections 6(b) and 10e(A) of the Administrative Procedure Act [5 U.S.C. §§ 555(b), 706(1)]. *Cf. National Labor Relations Board v. J. H. Rutter-Rex Mfg. Co.,* 396 U.S. 258, 266 & n.3, 90 S.Ct. 417, 421–22, 24 L.Ed.2d 405, 412 (1969) (dictum).

We conclude that the district court erred insofar as it barred the EEOC's back pay claim on the basis of the California limitations period.

## IV.

### SCOPE OF THE EEOC'S COMPLAINT

■ In her original charge filed with the EEOC, Ms. Edelson alleged that Occidental refused, on account of sex, to provide her with maternity leave, other pregnancy benefits, insurance, vacation benefits and seniority rights.

In the course of its investigation the EEOC discovered apparent discrimination against unmarried female employees in the distribution of "pregnancy-related benefits." It also discovered apparent discrimi-

---

12. It appears that the EEOC would likewise be immune from the defense of laches. *Cf. United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283, 1285–86 (1940); *Nabors v. National Labor Relations Board,* 323 F.2d 686, 688 (5th Cir. 1963). *But see Griffin Wheel, supra,* 511 F.2d at 459 n.5; *Georgia Power, supra,* 474 F.2d at 923. However, since the issue was not raised herein, we need not address it.

13. The court in *Kimberly-Clark* seemed to so conclude, although it did not make clear what type of relief was at issue. 511 F.2d at 1359–60.

14. *See, e. g., Johnson, supra,* 421 U.S. at 462 & n.7, 95 S.Ct. at 1721, 44 L.Ed.2d at 302–03; *Griffin Wheel, supra,* 511 F.2d at 459.

15. Clearly the cause of action "accrues" on the last date on which the allegedly unlawful act or practice occurs. *Collins v. United Airlines, Inc.,* 514 F.2d 594, 596 & n.2 (9th Cir. 1975); *Griffin Wheel, supra,* 511 F.2d at 459 n.6. *Cf. Johnson, supra,* 421 U.S. at 462, 95 S.Ct. at 1721, 44 L.Ed.2d at 302–03.

nation against male employees in the administration of the retirement system. Although these forms of alleged discrimination were not mentioned in the original charge, the EEOC included them in subparagraphs 8(b) and 9(c) of its complaint. Occidental argued successfully below that these charges should be dismissed as being outside the scope of the original charge.

As amended in 1972, Section 710 of Title VII provides:

For the purpose of all hearings and investigations conducted by the [EEOC] or its duly authorized agents or agencies, section 11 of the National Labor Relations Act (49 Stat. 455; 29 U.S.C. § 161) shall apply.

[86 Stat. 109; 42 U.S.C. § 2000e–9]

While the investigation in this case preceded the 1972 amendment of Section 710, it is clear that the prior statute was similar in scope. *See Motorola, Inc. v. McLain,* 484 F.2d 1339, 1342–44 (7th Cir. 1973); *Graniteville Co. v. Equal Employment Opportunity Comm'n,* 438 F.2d 32, 39 (4th Cir. 1971).

Section 11(1) of the National Labor Relations Act [29 U.S.C. § 161(1)] provides in part that the NLRB may gain access to "any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question." This language was given a broad reach in *National Labor Relations Board v. Wyman-Gordon Co.,* 394 U.S. 759, 768, 89 S.Ct. 1426, 1430–31, 22 L.Ed.2d 709, 716 (1969).

Section 709(a) of Title VII [42 U.S.C. § 2000e–8(a)] today provides, as it did in 1964:

In connection with any investigation of a charge filed under section 706, the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this title and is relevant to the charge under investigation.

Had Occidental believed that the EEOC's investigation exceeded the permissible statutory scope, it could have refused the EEOC's demand for access and sought adjudication of its rights.[16] Occidental did not do so. Thus we can only conclude that the EEOC investigation was reasonable and that the information supporting the allegations in subparagraphs 8(b) and 9(c) was acquired during that reasonable investigation.

In *Equal Employment Opportunity Comm'n v. General Electric Co.,* 532 F.2d 359, 366 (4th Cir. 1976), the Fourth Circuit held:

So long as [discovery of] the new discrimination arises out of the reasonable investigation of the charge filed, it can be the subject of a "reasonable cause" determination, to be followed by an offer by the Commission of conciliation, and, if conciliation fails, by a civil suit, without the filing of a new charge on such claim of discrimination. In other words, the original charge is sufficient to support action by the EEOC as well as a civil suit under the Act for *any discrimination stated in the charge itself or [discovered] in the course of a reasonable investigation of that charge,* provided such discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the conciliation procedures fixed in the Act.

(Emphasis in original.) *Accord, Equal Employment Opportunity Comm'n v. Huttig Sash & Door Co.,* 511 F.2d 453, 455 (5th Cir. 1975); *Equal Employment Opportunity Comm'n v. Kimberly-Clark Corp.,* 511 F.2d 1352, 1363 (6th Cir. 1975). We agree with

---

**16.** *See Local No. 104, Sheet Metal Workers International Ass'n v. Equal Employment Opportunity Comm'n,* 439 F.2d 237, 241–43 (9th Cir. 1971); *Circle K Corp. v. Equal Employment Opportunity Comm'n,* 501 F.2d 1052

(10th Cir. 1974); *Joslin Dry Goods Co. v. Equal Employment Opportunity Comm'n,* 483 F.2d 178 (10th Cir. 1973); *Motorola, Inc. v. McLain, supra; Graniteville Co., supra.*

the reasoning of the Fourth, Fifth and Sixth Circuits.[17]

In this case, Occidental received adequate notice during administrative investigation of the substance of the issues subsequently raised in subparagraphs 8(b) and 9(c) of the EEOC's complaint. Reference was made to those issues in both the District Director's Findings of Fact (February 25, 1972), and the EEOC's Determination of Reasonable Cause (February 8, 1973). Thus the EEOC complied with the statute by presenting these issues for conciliation. *See* Section 706(f)(1) [42 U.S.C. § 2000e–5(f)(1)].

We note that the EEOC itself could independently bring charges based upon the information it reasonably acquired during the investigation of Ms. Edelson's charge. *See* Section 706(b) [42 U.S.C. § 2000e–5(b)]. To require the EEOC to pursue that route, rather than allowing it to include the new charges along with the original one in a single Determination of Reasonable Cause, would be to champion form over substance and to generate "an inexcusable waste of valuable administrative resources" and "intolerable delay," in violation of statutory purpose. *General Electric, supra,* 532 F.2d at 365, 11 C.C.H.—Empl.Prac.Dec. at 6614.

It remains true that Ms. Edelson would not have had "standing" to charge Occidental with discrimination against unmarried female employees (Ms. Edelson was married), or against male employees with respect to retirement. However, as we have discussed earlier, the EEOC is charged with the vindication of public policy, not merely with the enforcement of private rights. In this case, enforcement by the EEOC of the objectives of Title VII should not be frustrated because a private charging party may not have had "standing" to make a particular claim.

Finally, it is argued that "amendment" by the EEOC of the original charge may operate to the detriment of the charging party. In this case such a result is speculative. In any case, the charging party should be able to intervene in either the administrative or judicial proceeding to insure that his or her rights are fully protected. *See* Section 706(f)(1) [42 U.S.C. § 2000e–5(f)(1)].

For the above reasons, we conclude that the district court erred in dismissing subparagraphs 8(b) and 9(c) of the EEOC's complaint.

V.

CONCLUSION

The judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.

---

**17.** In so agreeing we do not depart in any respect from our recent decision in *Oubichon v. North American Rockwell Corp.,* 482 F.2d 569 (9th Cir. 1973), in which we stated:

"When an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC."
*Id.* at 571.

*Oubichon* involved the complaint of a private party, he being subject to traditional notions of standing. We deal here with a complaint filed by a public agency seeking vindication of public rights.