**UNITED STATES EQUAL EMPLOY- MENT OPPORTUNITY COMMISSION, Plaintiff,**

**v.**

**TEMPEL STEEL COMPANY, Defendant.**

**No. 89 C 0471.**

United States District Court, N.D. Illinois, E.D.

Aug. 4, 1989.

John P. Rowe, Regional Atty., Jason S. Hegy, Supervisory Trial Atty., Dana R. Hutter, Trial Atty., E.E.O.C., Chicago, Ill., for E.E.O.C.

Richard A. Devine, Dean A. Dickie, Bruce R. Meckler, Phelan, Pope & John,

Ltd., Brian W. Bulger, Katten, Muchin & Zavis, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff the United States Equal Employment Opportunity Commission ("EEOC") brings this action charging defendant Tempel Steel Company with racially discriminatory recruitment and hiring practices in violation of § 703(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a). Tempel Steel has filed a motion to dismiss or for summary judgment which, for the reasons set forth below, we deny.

### Factual Background and Procedural History

On November 15, 1983, Michael Austin, a former employee of Tempel Steel at its Niles, Illinois facility, filed a claim with the EEOC charging Tempel Steel with failing to rehire him because he is black. Austin alleged the following facts in his claim. In September of 1982, Tempel Steel laid off a number of employees including Austin. Austin was told that if the company decided to refill the positions, any recall of laid-off employees would be based on seniority. About a year later, he learned through an unidentified source that Tempel Steel had been hiring people "off the streets" to fill positions similar to that which Austin held. The vast majority of the new employees were white. Austin proceeded to talk to Art Cannon, Tempel Steel's Personnel Director, and requested that he be rehired. Cannon denied the request ostensibly because Austin had been absent twelve days in 1980, had attitude problems and had once refused to operate a press. Austin views these proffered reasons as a pretext "to deprive [him] and similarly situated Blacks of [their] recall/re-hire rights."

The EEOC investigated the claim. At one point, the EEOC subpoenaed Tempel Steel to provide records regarding its hiring, layoff and recall practices. The EEOC successfully enforced the subpoena in court. *Equal Employment Opportunity Commission v. Tempel Steel Co.*, 627 F.Supp. 788 (N.D.Ill.1986), *aff'd*, 814 F.2d 482 (7th Cir.1987). On August 16, 1988, the EEOC issued its reasonable cause determination which stated in part:

> Like and related to the issues raised in the charge, and growing out of the investigation of them, are the issues of discrimination against blacks as a class as to hiring and recruiting for employment in factory positions.
>
> Examination of the evidence indicates that there is reasonable cause to believe that Respondent has violated Title VII by engaging in hiring and recruiting policies and practices which exclude blacks as a class from factory positions. The evidence discloses gross disparities between black representation in Respondent's workforce and the number of qualified blacks available in Respondent's labor market.

Pursuant to its authority under § 706(b) of Title VII, the EEOC initiated negotiations "to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e–5(b). Those efforts proved fruitless and the EEOC filed this action. Tempel Steel contends here that we lack subject matter jurisdiction because the alleged unlawful practices are outside the scope of Austin's claim.[1]

### Discussion

As a general rule, civil actions by the EEOC or private claimants to remedy violations of Title VII are limited in scope to the discrimination alleged in the underly-

---

1. Tempel Steel's motion is properly considered a motion for summary judgment. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863–64 (7th Cir. 1985). Tempel Steel moved alternatively for summary judgment but failed to include a Statement of Material Undisputed Facts as required by Local Rule 12(*l*). In attempting to excuse its noncompliance, Tempel Steel notes that its mo-

tion relies solely on Austin's claim and the EEOC's determination, both of which the EEOC should have attached to its complaint. We are unaware of any such pleadings requirement, and Local Rule 12(*l*) does not allow for any exception to its dictates. Accordingly, we deny the motion on the grounds of noncompliance with Local Rule 12(*l*) as well as on the merits.

ing employee claim. In recognition, however, of the broad investigatory and remedial powers of the EEOC and the reality that employees often file their EEOC claims without the benefit of legal assistance, courts have given Title VII plaintiffs a certain degree of latitude in the breadth of their court challenges to employer practices. In *Jenkins v. Blue Cross Mut. Hospital Ins., Inc.,* 538 F.2d 164 (7th Cir.), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976), the Seventh Circuit held that at least as to private claimants, "the complaint in the civil action ... may properly encompass any ... discrimination *like or reasonably related* to the allegations of the charge and growing out of such allegations." (Emphasis added.) *Id.* at 167, *quoting Danner v. Phillips Petroleum Co.,* 447 F.2d 159, 162 (5th Cir.1971).

While the Seventh Circuit has not directly addressed the issue, the vast majority of Courts of Appeals have held that the EEOC enjoys significantly greater latitude than private claimants in filing civil actions that deviate from the original claim. The Fourth Circuit summarized the standard and rationale as follows:

> If the EEOC uncovers during [an] investigation [of a claim] facts which support a charge of another discrimination than that in the filed charge, it is neither obliged to cast a blind eye over such discrimination nor to sever those facts and the discrimination so shown from the investigation in process and file a Commissioner's charge thereon, thereby beginning again a repetitive investigation of the same facts already developed in the ongoing investigation. To cast a blanket over such facts in the ongoing proceedings would be a violation of the EEOC's statutory obligation in the area of employment discrimination. To require a new charge based on those facts and to begin again the administrative process thereon, would result in an inexcusable waste of valuable administrative resources and an intolerable delay in the enforcement of rights which require a "timely and effective remedy" ... [T]he original charge is sufficient to support action by the EEOC as well as a civil suit

under the Act for *any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge,* provided such discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the conciliation procedures fixed in the Act.

*Equal Employment Opportunity Commission v. General Electric Co.,* 532 F.2d 359, 365–66 (4th Cir.1976) (allowing an action charging sex discrimination *in hiring* discovered during the investigation of a claim of racially discriminatory *promotion and transfer* practices). *Accord Equal Employment Opportunity Commission v. Brookhaven Bank & Trust Co.,* 614 F.2d 1022 (5th Cir.1980) (claim of discriminatory hiring practices supported an EEOC action charging segregated job classifications); *Equal Employment Opportunity Commission v. Bailey,* 563 F.2d 439 (6th Cir. 1977) (claim of sex and race discrimination could not support an EEOC action alleging religious discrimination against Seventh Day Adventists), *cert. denied,* 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 506 (1977); *Equal Employment Opportunity Commission v. Hearst Corp., Seattle Post–Intelligencer Div.,* 553 F.2d 579 (9th Cir.1976).

It is not clear to us that there is anything more than a semantical difference between the latitude given private claimants and that accorded the EEOC. Like the standard for EEOC civil actions, the "like or relatedness" standard for private claimants is often framed in terms of "a reasonable investigation" arising from the original claim. *See, e.g., Gamble v. Birmingham Southern R.R. Co.,* 514 F.2d 678, 687 (5th Cir.1975) (the scope of a private claimant's civil action is limited to "the scope of the EEOC investigation 'which can reasonably be expected to grow out of the charge of discrimination.' ") *See also Fellows v. Universal Restaurants, Inc.,* 701 F.2d 447, 450 (5th Cir.), *cert. denied,* 464 U.S. 828, 104 S.Ct. 102, 78 L.Ed.2d 106 (1983); *Farmer v. ARA Services, Inc.,* 660 F.2d 1096, 1105 (6th Cir.1981). Courts nevertheless expressly acknowledge that they in fact grant greater deference to the EEOC,

*see, e.g., Hearst Corp.*, 553 F.2d at 580, and support their stance with compelling justifications: The EEOC's role in the claims process is to investigate a claim thoroughly and reasonably and remedy *any* unlawful discrimination that it uncovers. *See generally General Electric Co.*, 532 F.2d at 364. Requiring the EEOC to file a new claim and initiate the administrative process from square one would "champion form over substance" and lead to inefficiencies and delays that can only disserve the remedial goals of Title VII. *Hearst Corp.*, 553 F.2d at 581, *quoting Equal Employment Opportunity Commission v. Occidental Life Ins. Co.*, 535 F.2d 533, 542 (9th Cir.1976), *aff'd*, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). We have no doubt that the Seventh Circuit would subscribe to this reasoning and follow these decisions. *Accord Equal Employment Opportunity Commission v. Chicago Miniature Lamp Works*, 526 F.Supp. 974 (N.D.Ill.1981) (finding *General Electric* and like decisions entirely consistent with the Seventh Circuit's holding and rationale in *Jenkins*).

The EEOC's charges here that Tempel Steel discriminated against blacks in its recruitment and hiring decisions reasonably arose out of the investigation of Austin's original claim. "[The EEOC] has the power to investigate and thus to subpoena documents concerning any employer practice which may shed light on the discrimination charged." *Equal Employment Opportunity Commission v. Cambridge Tile Mfg. Co.*, 590 F.2d 205, 206 (6th Cir.1979). Ordinarily, decisions to hire new employees or to rehire former employees are not so divorced from each other as to constitute distinct and unrelated employment practices. In either case, the decisionmaker looks to fill certain positions. The unlawful discrimination that might infect one decision cannot but accompany the other.[2] Austin's claim itself drew this connection:

> Early in November 1983 I was told (by a reliable source) that the company had been hiring people off the street for quite some time all of whom except approximately ten (10) were Caucasian. As a result on November 14, 1983 I went to see Art Cannon, Caucasian, Personnel Director and asked to be recalled or rehired.

Even though Austin's personal interest in the claim involved only a decision not to rehire a former employee, the claim expressly identified racial discrimination in Tempel Steel's hiring practices. We decline Tempel Steel's invitation to compartmentalize employment decisions in a way that would seriously impair the EEOC's power to investigate fully a claim challenging a factually-specific hiring or rehiring decision that implicates more generally the employer's overall practice of selecting persons for employment.[3]

Finally, allowing the EEOC's action here to proceed does not deny Tempel Steel its constitutional right to due process.

---

**2.** On this basis, the circumstances here are not at all like those cases in which the courts found material distinctions between an employer's decision to terminate an employee and a later decision not to rehire that employee. *Caldwell v. National Assoc. of Home Builders*, 771 F.2d 1051, 1055 (7th Cir.1985) (assessing the timeliness of claims arising from those two decisions); *Zuckerstein v. Argonne Nat. Laboratory*, 663 F.Supp. 569, 576 (N.D.Ill.1987) (not allowing a plaintiff who did not comply with the prerequisites to a Title VII action to piggy-back his claim onto that of a complying plaintiff).

**3.** Tempel Steel relies heavily on the court's decision in *Hampson v. Board of Education*, 41 Fair Empl.Prac. Cases 606 (N.D.Ill.1986). There, the court dismissed a count in which the plaintiff charged the defendant with failing in 1982 to hire her for a position as principal of a school when her EEOC claim alleged the discriminatory failure in 1979 to rehire her as a teacher. The court reasoned in part as follows:

> [T]he charge that defendant did not hire [the plaintiff] for a principal's position is a different type of claim from the charge that they discharged her and did not rehire her as a teacher because of her national origin. The charge of failure to appoint her to a principal's position relates to discrimination in hiring rather than one of reduction in force-failure to rehire. This court finds that Hampson's allegation of failure to hire her as a principal is not like or reasonably related to her claim for failure to rehire.

*Id.* at 609. While we question the categorical nature of the court's assertion, the case is distinguishable in that Austin's claim expressly connected Tempel Steel's hiring practices with its rehiring decisions and, in any event, the EEOC rather than Austin filed this civil action.

Courts have consistently held that as long as the employer is made aware of the EEOC's charges in a reasonable cause letter, Title VII conciliation procedures are followed, and the employer can fully avail itself of the tools of discovery to prepare to defend its practices in the civil action, due process concerns are satisfied. *General Electric,* 532 F.2d at 370–71; *Georator Corp. v. Equal Employment Opportunity Commission,* 592 F.2d 765, 769 (4th Cir. 1979). All of these conditions have been met here.

### Conclusion

The EEOC can maintain this action without filing a separate charge of discriminatory hiring and recruitment practices. Accordingly, Tempel Steel's motion for summary judgment is denied. It is so ordered.